DONALD JOSEPH KOSHMIDER, II,

               Petitioner,

Case No. 1:19-cv-769

v.

Honorable Paul L. Maloney

DANIEL LESATZ,

               Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because Petitioner has failed to raise a meritorious federal claim.

## Discussion

### I.     Factual allegations

Petitioner Donald Joseph Koshmider, II, was previously incarcerated with the Michigan Department of Corrections (MDOC).  Before Petitioner filed this action, he was paroled. Even though Petitioner was paroled before he filed his petition, he was still "in custody." *Jones v. Cunningham*, 371 U.S. 236, 242 (1963) (holding that petitioner who was on parole was still "in custody" for habeas purposes).  Just a few days after he filed his petition, he was discharged by the MDOC.  Petitioner's discharge does not moot his petition "because of the continuing collateral consequences to a wrongful criminal conviction."  *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004) *abrogated on other grounds Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010).

Before his parole and discharge, Petitioner was serving six concurrent sentences of 13 to 180 months imposed by the Wexford County Circuit Court on August 28, 2017.  Those sentences were imposed after a Wexford County jury, following a four-day trial that ended on July 14, 2017, found Petitioner guilty on six counts relating to delivery of marijuana and maintaining a drug house.  Petitioner was found guilty of one count of delivery of marijuana to Andrea Deleon on June 27, 2016, and one count of possession with intent to deliver marijuana on July 11, 2016, both counts in violation of Mich. Comp. Laws § 333.7401(2)(d)(iii); two counts of aiding and abetting the delivery of marijuana, one count for delivery to Tayler Curtis on April 21, 2016, and one count for delivery to Aaron Sible on June 9, 2016, both counts in violation of Mich. Comp. Laws § 333.7401(2)(d)(iii); two counts of maintaining a drug house, one count for his home and one count for the shop where the marijuana was sold, both counts in violation of Mich. Comp. Laws § 333.8405(1)(d); and one count of possession of marijuana, in violation of Mich. Comp. Laws § 333.7403(2)(d).  (Appl. for Leave to Appeal, ECF No. 1-1, PageID.77.)  Petitioner was

sentenced to time served on the possession count; therefore, because he was not "in custody" for that conviction at the time he filed his petition, it is not at issue here.

The Michigan Court of Appeals described the underlying facts as follows:

Defendant owned and operated Best Cadillac Provisions, a medical marijuana dispensary located in Wexford County. The Traverse Narcotics Team (TNT) began investigating defendant in 2014 for failing to comply with state drug laws. In 2016, TNT initiated several controlled buys of marijuana from Best Cadillac Provisions using confidential informants for whom defendant was not a registered primary caregiver under the Michigan Medical Marijuana Act (MMMA), MCL 333.26421 et seq., marked money, and surveillance teams. After three successful controlled buys (one in April 2016 and two in June 2016), police executed search warrants at Best Cadillac Provisions and at defendant's home. From Best Cadillac Provisions, police seized several items, including a digital scale, two cell phones, and a briefcase containing suspected marijuana and marijuana oil. Police seized ammunition, police scanners, a backpack containing marijuana edibles, marijuana, and 27 marijuana plants found in two rooms located in defendant's basement, among other things, from defendant's home.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.26.)

The Michigan Medical Marijuana Act (MMMA) creates certain immunities from criminal prosecution for "qualifying patients" and "primary caregivers." The MMMA also provides affirmative defenses to patients and primary caregivers. To gain the protection of immunity, patients and caregivers must be registered. The affirmative defenses are available to patients and caregivers whether or not they are registered. Prior to trial, the court conducted an evidentiary hearing regarding whether Petitioner could avail himself of the immunities and affirmative defenses available under the MMMA. The court determined Petitioner could not.

Petitioner was the only witness at the hearing. (Mich. Ct. App. Op., ECF No. 1-1, PageID.30.) The court of appeals described his testimony as follows:

Defendant testified that he has a valid medical marijuana card that was also valid in July 2016. Defendant testified that when the police executed the search warrant at Best Cadillac Provisions on July 11, 2016, he was present and had a locked briefcase with him containing approximately 1 ½ ounces of medical marijuana, as well as several (3-4) grams of marijuana concentrate. Defendant admitted that he owned Best Cadillac Provisions for the express purpose of providing medical

3

marijuana to medical marijuana patients, and that he allowed employees to distribute the medical marijuana that he provided to Best Cadillac Provisions for him from that location as well. Defendant testified that he kept the marijuana for Best Cadillac Provisions in a locked briefcase, and admitted that the only marijuana at Best Cadillac Provisions on July 11, 2016, was that contained in the locked briefcase, and that it was intended for his personal use and for sale that day at Best Cadillac Provisions. Defendant testified that he is his own medical marijuana caregiver.

Defendant further testified that the marijuana plants found at his home during the execution of a search warrant on July 11, 2016, were not his plants. He testified that the plants belonged to Kris and Rose Swaffer, who were caregivers that paid him in cash each month for the use of his basement. Defendant testified that he did not have access to the basement rooms where the marijuana plants were found, but that he did have access to the open areas of the basement. Defendant additionally testified that he had "medibles" (marijuana edibles), inside a backpack in the office of his home that the police seized on July 11, 2016, that were for his personal use, and that marijuana butter from his refrigerator was also seized. He testified that he did not carry the medibles or concentrate to Best Cadillac Provisions because, according to defendant, most people only wanted marijuana flowers.

(*Id.*, PageID.30-31.) The court described additional testimony from the trial:

Testimony and evidence at trial established that three confidential informants made controlled buys of marijuana at Best Cadillac Provisions on three different days in 2016. All three informants testified that they had no primary medical marijuana caregiver at Best Cadillac Provisions. Testimony and evidence also established at trial that defendant leased two rooms in his basement to the Swaffers for them to grow marijuana to provide to medical marijuana patients, and that both rooms were padlocked. However, there was no key to one of the padlocks, so a single screw held the hardware to the padlock in place and a screwdriver used to remove the screw and gain access to the room was placed on a table near the door in the basement.

(*Id.*, PageID.31.) Petitioner does not challenge the facts described by the court of appeals.

Following his conviction, Petitioner appealed his convictions to the Michigan Court of Appeals. Petitioner filed a brief in the Michigan Court of Appeals prepared with the assistance of counsel. Petitioner also filed a *pro per* brief raising several additional issues. The court of appeals affirmed the trial court by unpublished opinion issued February 7, 2019. (Mich. Ct. App. Op., ECF No. 1-1, PageID.26-41.) Petitioner, again with the assistance of counsel, then filed an

4

application for leave to appeal in the Michigan Supreme Court. The supreme court denied leave by order entered July 29, 2019. (Mich. Order, ECF No. 1-1, PageID.25.)

On September 18, 2019, Petitioner timely filed his habeas corpus petition raising multiple grounds for relief, including the following seven issues from his counsel-assisted appellate brief:

I. The Court of Appeals erred when its opinion failed to analyze Mr. Kos[h]mider's Issue's accord[ing] to the Legislative directive that Public Act 283 is retroactive.

II. The Court of Appeals erred when it opined "Thus", the marijuana in the room that was accessible to defendant could be attributable to him and he would not be entitled to § 4 immunity for the possession of it because the storage of the marijuana . . . did not comply with the MMMA.

III. The Court of Appeals erred when it opined that "he [defendant] was not entitled to immunity under [§] 4 . . . because any assistance to registered qualified patient must be limited to the use or administration of the marijuana, which our Supreme Court has determined is conduct involving only actual ingestion of marijuana. . . . While the sale of medical marijuana is included with the definition of "medical use" marijuana . . . "the transfer, delivery and acquisition of marijuana are three activities that are part of the "medical use" of that the drafters of the MMMA chose not to include as protected activities within § 4(i)."

IV. The Court of Appeals erred when it opined that "Defendant also claims that the trial Court abused its discretion in ordering a blanket prohibition against the admission of MMMA evidence. Defendant contends that these errors rise to the level of constitutional deprivations.

V. The Court of Appeals erred when it opined that the Defendant's contention that "whether the employees (who would be testifying) and defendant had their medical marijuana cards was relevant to whether Defendant aided and abetted them, given that one could not aid or abet something that is legal. "The trial court agreed with the prosecution and we find no abuse in discretion on the issue."

VI. The Court of Appeals erred when it opined tha[t] the trial court did not abuse its discretion when it failed to allow the jury to determine whether maintaining a drug house was the substantial purpose of the use of the property at the two locations in counts 4 and 5 as [the Supreme Court] required in People v. Thompson . . . and trial counsel was ineffective for failure to know the law and request additional clarifying jury instructions.

VII.     The evidence was insufficient in Counts 3 and 7 that Mr. Koshmider aided and abetted Jayson Hunt & Mike Holloway to illegal distribution of marijuana.

(Pet., ECF No. 1, PageID.5-16.)  Petitioner also raises collectively, as petitioner habeas ground

VIII, the six issues set forth in his *pro per* brief on appeal, which he attached to his petition:

VIII.    The trial court erred in its discretion and denied Defendant-Appellant his due process rights to a fair trial when it declined to grant a mistrial based on the prosecution's misstatement of law.

IX.      Defendant-Appellant has been charged, tried, convicted, and sentenced to a term of incarceration in violation of his constitutional rights of due process for the "misinterpretation" of the language detailed in the Michigan Medical Marijuana Act.

X.       The trial court erred and abused its discretion and denied Defendant-Appellant his due process right to a fair trial when it allowed the prosecution to commit misconduct.

XI.      The prosecution failed to produce legally sufficient evidence.

XII.     *Mazur* is controlling case law as it further defines the statutory definition of medical use.

XIII.    Defendant-Appellant has been denied access to the courts by being incarcerated in an MDOC facility that has no law library computer to research case law to effectively write his Standard 4 Brief.

(Std. 4 Br., ECF No. 1-1, PageID.45-46.)

## II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of

1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'"

and ensures that state court convictions are given effect to the extent possible under the law.  *Bell*

*v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a

person who is incarcerated pursuant to a state conviction cannot be granted with respect to any

claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v Rodgers*, 569 U.S. 58, 64 (2013); *Parker v Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (*en banc*); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    The MMMA

According to the Michigan Court of Appeals, at the time Petitioner committed the charged offenses, the MMMA offered four distinct protections from prosecution for and/or conviction of marijuana offenses, known as the § 4 immunities:

1.    A registered qualifying patient engaged in the medical use of marijuana could possess up to 2.5 ounces of usable marijuana and up to 12 marijuana plants, kept in an enclosed, locked facility, unless that patient specified a primary caregiver during the state registration process.

2.    A registered primary caregiver could possess up to 2.5 ounces of usable marijuana and 12 marijuana plants in an enclosed locked facility for each registered qualified patient who has specified the primary caregiver during the registration process, if the caregiver is assisting the qualifying patient with the medical use of marijuana.

3.    A person can be in the presence of the medical use of marijuana in accordance with the MMMA.

4. A person can assist a registered qualifying patient with using or administering marijuana.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.27-29.) Similarly, at trial, a patient and a patient's primary caregiver could assert the medical purpose of marijuana use as a defense, known as the § 8 defenses, to a marijuana charge if the evidence shows:

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.

Mich. Comp. Laws § 333.26428(a).

It is the prerogative of the state to define the elements of a crime and the federal courts are bound by their determination. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."). It is also the prerogative of the state to define a defense and under what circumstances it applies to a particular crime. *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general

rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .").

The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit recognizes "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same). Thus, when the Michigan courts say what is and what is not usable marijuana, what does or does not constitute the use or administration of marijuana, and what is or is not an enclosed, locked facility, the state court's determination binds this Court.

Many of the Petitioner's habeas issues ask this Court to undo the Michigan appellate court's interpretation of the MMMA. That is beyond the scope of habeas review. One of the reasons Petitioner could not avail himself of the MMMA's protections is that he was in possession of marijuana edibles and liquid marijuana concentrate. Edibles and concentrate were not included in the definition of usable marijuana under the statute at the time of Petitioner's offenses. They were added by statute effective December 16, 2016. Petitioner argues that the amendment should be applied retroactively. The legislation seems to support his argument. *See* 2016 Mich. Pub. Acts 283 ("This amendatory act is curative and applies retroactively as to the

following: clarifying the quantities and form of marihuana for which a person is protected from arrest . . . .").  Yet, despite Petitioner's argument regarding retroactivity and the language of the MMMA amendment, the Michigan Supreme Court let stand the Michigan Court of Appeal's opinion that the amendment would apply only prospectively.  That state court determination of state law binds this Court.

Petitioner's ability to enjoy the MMMA safe harbor was also hampered by his access to a basement room in his home that contained marijuana plants.  He claims the marijuana was not accessible to him, it belonged to others, and was kept in compliance with the MMMA because it was in an enclosed, locked facility.  The state courts, however, determined that a room that can be opened by removing a screw with a screwdriver that is conveniently placed on a table adjacent to the door is not an enclosed, locked facility.  That issue of state law is conclusively resolved for purposes of habeas review.

Finally, Petitioner contends that the transfer of marijuana from the dispensary employees to the controlled buyers was "legal" under the MMMA and he cannot be prosecuted for being present during or for aiding and abetting such "legal" activity.  The testimony established that neither Petitioner nor the dispensary employees were registered caregivers for the controlled buyers.  Thus, the transactions could not be "legal" under the first three categories of immunity.  Moreover, the court of appeals concluded the transaction was also not rendered "legal" under the fourth category of immunity because the transfer of marijuana to a qualifying patient was not assisting with the use or administering of marijuana.  Again, this Court is bound by those determinations of state law.

The binding state-law determinations described above entirely undercut Petitioner's arguments on habeas issues I (which depends upon the retroactivity of the MMMA

amendments), II (which depends upon whether Petitioner had access to the marijuana in the basement), III (which depends upon redefining use or administration of marijuana), IX (which depends upon a determination that the state courts misinterpreted the MMMA), and XII (regarding which state authorities control the definition of medical use). Petitioner attempts to show that the state courts' determination regarding the MMMA are contrary to state law—issues that are not cognizable on habeas review. Petitioner has utterly failed to show that the state court's determinations with regard to those issues are contrary to, or an unreasonable application of, clearly established *federal* law. Accordingly, he is not entitled to habeas relief on those claims.

### IV.    Insufficient evidence regarding MMMA immunities and defenses

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. at 319, which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

Petitioner's challenges to the sufficiency of the evidence are not really directed at the prosecutor's failure to introduce sufficient evidence of the elements of the offenses. Petitioner does not dispute that the prosecutor introduced sufficient evidence that he—or the dispensary

employees—delivered marijuana. Nor does Petitioner dispute that there was sufficient evidence that he possessed marijuana on the day the search warrants were executed. He has not argued that there was not sufficient evidence that he kept and maintained his home or the dispensary knowing the buildings were used for keeping or selling marijuana. In short, it is beyond dispute that there was sufficient evidence to show that Petitioner had sold marijuana, possessed marijuana with the intent to deliver it, aided and abetted the sale of marijuana, and kept and maintained a house and dispensary where marijuana was grown, kept, or sold. Instead, he contends there was insufficient evidence that that activities were illegal based on the affirmative defenses available under the MMMA.

In *Smith v. United States*, 568 U.S. 106 (2013), the Supreme Court considered whether the prosecutor was bound to prove the absence of an affirmative defense beyond a reasonable doubt. The Court reasoned:

> While the Government must prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged," *In re Winship*, 397 U.S. 358, 364 (1970), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required," *Patterson v. New York*, 432 U.S. 197, 210, (1977). The State is foreclosed from shifting the burden of proof to the defendant only "when an affirmative defense does negate an element of the crime." *Martin v. Ohio*, 480 U.S. 228, 237 (1987) (Powell, J., dissenting). Where instead it "excuse[s] conduct that would otherwise be punishable," but "does not controvert any of the elements of the offense itself," the Government has no constitutional duty to overcome the defense beyond a reasonable doubt. *Dixon v. United States*, 548 U.S. 1, 6 (2006).

*Smith*, 568 U.S. at 110.

The Michigan Supreme Court acknowledged the proper constitutional limits when it determined the appropriate burden of proof with regard to MMMA defenses:

> The MMMA is silent regarding the burden of proof necessary for a defendant to be entitled to immunity under § 4. When statutes are silent as to the burden of proof, "we are free to assign it as we see fit, as long as we do not transgress the constitutional requirement that we not place on the defendant the burden of persuasion to negate an element of the crime."

Assigning the burden of proof involves two distinct legal concepts. The first, the burden of production, requires a party to produce some evidence of that party's propositions of fact. The second, the burden of persuasion, requires a party to convince the trier of fact that those propositions of fact are true. The prosecution has the burden of proving every element of a charged crime beyond a reasonable doubt. This rule of law exists in part to ensure that "there is a presumption of innocence in favor of the accused . . . and its enforcement lies at the foundation of the administration of our criminal law." To place the burden on a criminal defendant to negate a specific element of a crime would clearly run afoul of this axiomatic, elementary, and undoubted principle of law.

A defendant invoking § 4 immunity, however, does so without regard to any presumption of innocence. The defendant does not dispute any element of the underlying charge when claiming immunity. Indeed, the defendant may even admit to otherwise unlawful conduct and yet still be entitled to § 4 immunity. When claiming § 4 immunity, the defendant places himself in an offensive position, affirmatively arguing entitlement to § 4 immunity without regard to his or her underlying guilt or innocence of the crime charged. In *People v. D'Angelo*, we determined that the accusatorial nature of a defendant's request for a defense of entrapment, without regard to his or her guilt or innocence of the underlying criminal charge, required the burden of proof by a preponderance of the evidence to be allocated to the defendant. The accusatorial nature of an entrapment defense and the offensive nature of immunity are similar because in both the defendant posits an affirmative argument, rather than defending a particular charge. We now follow this well-established rule of criminal procedure and assign to the defendant the burden of proving § 4 immunity by a preponderance of the evidence.

*People v. Hartwick*, 870 N.W.2d 37, 50-51 (Mich. 2015) (footnotes omitted). With respect to the § 8 defenses, the defendant also has the burden of proof:

[I]f a defendant establishes these elements and no question of fact exists regarding these elements, then the defendant is entitled to dismissal of the criminal charges. We also clarified that if questions of fact exist, then "dismissal of the charges is not appropriate and the defense must be submitted to the jury." Additionally, if a defendant has not presented prima facie evidence of each element of § 8 by "present[ing] evidence from which a reasonable jury could conclude that the defendant satisfied the elements of the § 8 affirmative defense, . . . then the circuit court must deny the motion to dismiss the charges," and "the defendant is not permitted to present the § 8 defense to the jury."

*Hartwick*, 870 N.W.2d at 56.

The State of Michigan may constitutionally shift the burden of proof with respect to the MMMA immunities and defenses. They have done so. Under those circumstances, there

can be no claim that the evidence was insufficient to establish the elements of the offense. When Petitioner contends the actions of the dispensary employees were legal under the MMMA and, therefore, Petitioner did not aid and abet a crime, and Petitioner claims his own actions in possessing or delivering marijuana or keeping and maintaining drug houses were legal under the MMMA, he raises only state-law issues regarding an affirmative defense, not an issue of the constitutional sufficiency of the evidence regarding the offenses with which he was charged. Accordingly, with regard to habeas issues VII and XI, Petitioner has failed to show that the state courts' determinations are contrary to, or an unreasonable application of, clearly established federal law and he is not entitled to relief on those claims.

## V.      Evidence regarding medical use of marijuana

Because of the trial court's pretrial determination that Petitioner could not avail himself of the MMMA immunities and defenses, the prosecutor filed a motion *in limine* to exclude evidence at trial in support of the MMMA affirmative defenses. The trial court granted the motion. Petitioner challenges the "blanket" prohibition and the specific exclusion of evidence that Petitioner and the dispensary employees had their medical marijuana cards.

The Michigan Court of Appeals rejected Petitioner's characterization of the evidence exclusion as a "blanket" exclusion. The appellate court found that the trial court excluded only evidence that Petitioner and the dispensary employees who participated in the controlled buys had valid medical marijuana cards. (Mich. Ct. App. Op., ECF No. 1-1, PageID.34-35.) The appellate court's finding is consistent with Petitioner's description of the trial court's ruling. Petitioner reports the trial court's decision as follows: "The trial court stated: So, as a result, I believe that the fact that Mr. Holloway or Mr. Hunt or Mr. Koshmider has a . . . medical marijuana card for medical treatment is not relevant under 401, and 402 tells us that irrelevant evidence is

not generally admissible." (Appl. for Leave to Appeal, ECF No. 1-1, PageID.101.) Petitioner's claim of a blanket prohibition is not borne out by the record. Indeed, the appellate court specifically noted that "[d]espite the trial court's ruling, the trial was replete with testimony concerning the MMMA." (*Id*., PageID.35 n.1.)

The Michigan Court of Appeals upheld the trial court's exclusion of the valid medical marijuana card evidence:

> Because defendant was not entitled to the protections of the MMMA, and his employees testified that they were not registered caregivers to anyone and that they sold marijuana to people from Best Cadillac Provisions, whether defendant or his employees possessed a valid medical marijuana card.

(*Id*., PageID.35) (footnote omitted).

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle*, 502 U.S. at 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard.

Petitioner brings this issue within the realm of habeas cognizability when he suggests that the exclusion of this evidence deprived him of a defense. The Supreme Court has determined that a criminal defendant has the right to a "meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984), *quoted in Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006). The right is derived from the Sixth Amendment rights to compel and confront witnesses and from the Due Process Clause of the Fourteenth Amendment. *See Holmes*, 547 U.S. at 324; *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process law.").

The Supreme Court, however, repeatedly has recognized that the right to present a defense is subject to reasonable restrictions. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (the Sixth Amendment does not confer on the accused an "unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers*, 410 U.S. at 295; *see also Wong v. Money*, 142 F.3d 313, 325 (6th Cir. 1998).

> "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve. Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

*Scheffer*, 523 U.S. at 308 (internal citations omitted). Here, the trial court excluded the evidence based on a standard rule of evidence—irrelevant evidence is not admissible.

Petitioner has failed to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or that the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. Accordingly, he cannot show that the state courts' exclusion of the evidence (habeas grounds IV and V) is contrary to, or an unreasonable application of clearly established federal law. Certainly, it is no surprise that a court is not constitutionally compelled to admit evidence that is determined to be irrelevant.

Petitioner's claim fails, however, on a more fundamental level. Petitioner was not denied the opportunity to present a defense by exclusion of the evidence, he was denied the right to present the evidence because the court had previously, and constitutionally (see §§ III and IV above), determined that Petitioner had failed to establish entitlement to present the defense. Petitioner had the burden to present evidence in support of the defense at the pretrial hearing. The court concluded that he did not meet his burden and, therefore, evidence regarding immunity and defenses under the MMMA was rendered irrelevant at his trial.

## VI.    Jury instructions regarding keeping a drug house

Petitioner contends the jury instructions regarding keeping and maintaining a drug house were deficient and that his counsel rendered ineffective assistance in failing to request additional instructions regarding that charge. Section 333.7405 of the Michigan Compiled Laws

prohibits, among other things, "knowingly keep[ing] or maintain[ing] a store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances or that is used for keeping or selling controlled substances in violation of this article." Mich. Comp. Laws § 333.7405(d). Petitioner was accused of violating the section by keeping and maintaining his house and the dispensary.

With regard to those charges, the trial court instructed the jury as follows:

> To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt: First that the defendant knowingly kept or maintained, as to count 4, a building, and as to count 5, a dwelling; second, [th]at this building and/or dwelling was frequented by persons for the purposes of illegally using controlled substances, or used for illegally keeping controlled substances, or used for illegally selling of controlled substances; third, that the defendant knew that the building and or dwelling was frequented or used for such illegal purposes.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.36.) Petitioner contends the instruction fell short because it did not further define "keep or maintain" to require that the improper use of the property must be a substantial purpose and must be continuous to some degree as set out in *People v. Thompson*, 730 N.W. 2d 708 (Mich. 2007). (Appl. for Leave to Appeal, ECF No. 1-1, PageID.109-111.) Petitioner cites *People v. Norfleet*, 897 N.W.2d 195 (Mich. Ct. App. 2016), for the proposition that absent such clarification, the instructions are erroneous.

The *Thompson* court said nothing about jury instructions. It spoke only to the meaning of "keep or maintain." The *Thompson* court rejected the interpretive gloss that the court of appeals had applied, relying instead on the straightforward dictionary definitions of the words. *Thompson*, 730 N.W.2d at 712-14. The *Norfleet* court did not conclude, as Petitioner contends, that the instructions without the *Thompson* clarification are erroneous. Instead, the court held that there was no prejudice that arose from the "alleged instructional error" because there was ample

evidence that the use was a substantial purpose and was continuous to some degree. *Norfleet*, 897 N.W.2d at 201.

The Michigan Court of Appeals reached a similar conclusion in Petitioner's case. As an initial matter, however, Petitioner's appellate panel concluded that the "instruction accurately set forth the elements of maintaining a drug house." (Mich. Ct. App. Op., ECF No. 1-1, PageID.36.) Additionally, the appellate court found that it was essentially undisputed that Petitioner continuously used his house and the marijuana dispensary for the substantial purpose of keeping and/or selling marijuana. Petitioner does not challenge those factual determinations.

Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review. "Before a federal court may overturn a conviction resulting from a state trial in which [the challenged] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). The Supreme Court has defined the subcategory of instructional errors that warrant habeas relief very narrowly. *Estelle*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990) ("Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.").

The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). When a jury is not properly instructed with regard to the elements of the charged crime, the due process right to proof beyond a reasonable doubt is implicated. *Sandstrom v. Montana*, 442 U.S. 510 (1979). As noted above, however, it is the prerogative of the state to define the elements of the crime and the federal courts are bound by their determination. *See Johnson*, 559 U.S. at 138; *Jackson*, 443 U.S. at 324 n.16.

Here, the state appellate courts stated that the instruction accurately set forth the elements of the crime. That is all that due process requires. Therefore, Petitioner has failed to show that the state courts' determinations regarding his instructional challenge are contrary to, or an unreasonable application of clearly established federal law.

Petitioner's additional claim that counsel rendered ineffective assistance because counsel failed to request additional clarifying instructions also fails. The Michigan Court of Appeals analyzed the claim as follows:

> Defendant testified at trial that he used and paid rent for the building at Best Cadillac Provisions in order to sell medical marijuana out of the building. Because the trial court determined that defendant was not entitled to the protections afforded by the MMMA, defendant's testimony, by itself, was sufficient to establish that he knowingly kept the building for keeping or selling controlled substances in violation of MCL 333.7405. This is so even if the jury had been instructed, as defendant now asserts it should have been, that "keep or maintain" under the maintaining a drug house charge required that the controlled substance use be both continuous and a substantial purpose for which the building was used.
>
> Defendant also testified that he had marijuana edibles in a backpack seized from his home and that he did not take them to Best Cadillac Provisions because people purchasing from there only wanted the marijuana flowers. Defendant did not testify that all of the items in the backpack were for personal use; only that he was storing them at his home. Further evidence was produced showing that at least one of the two rooms in his basement was not "locked" but was instead, easily accessed through the removal of a single screw, and that a quantity of marijuana leaves, stems and clippings were in the open area of his basement, completely accessible to him. Defendant also testified that he brought the marijuana to Best Cadillac Provisions for it to be sold there on an almost daily basis, allowing for an inference that the marijuana was kept at his home and then transported to Best Cadillac Provisions as needed. Again, this evidence was sufficient to establish that defendant knowingly kept his house for the purpose of using controlled substances or for keeping or selling controlled substances illegally, in violation of MCL 333.7405(1)(d), even if the jury had been instructed as defendant[] contends was required.
>
> Further, counsel was not ineffective for failing to request the instruction, because the direct and circumstantial evidence clearly established defendant's guilt. The phrase "keep or maintain" implies usage with some degree of continuity that can be deduced by actual observation of repeated acts or circumstantial evidence. *People v Thompson*, 477 Mich 146, 155; 730 NW2d 708 (2007). There were repeated controlled buys at Best Cadillac Provisions and circumstantial evidence

that defendant knowingly kept controlled substances at his home for purposes of supplying Best Cadillac Provisions, and kept illegal marijuana edibles at his home for personal use and/or for sale. Given the evidence at trial, counsel is not ineffective for failing to advance a meritless argument or raise a futile objection concerning the properly given jury instructions. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

(Mich. Ct. App. Op., ECF No. 1-1, PageID.36-37.)

The appellate court's analysis is entirely consonant with clearly established federal law. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Petitioner faults his counsel for not objecting to the instruction as given. The state appellate court concluded that the instruction as given was proper and that any objection would have been meritless. Counsel's failure to make a frivolous or meritless argument does not

constitute ineffective assistance of counsel. *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). The state appellate court's rejection of Petitioner's ineffective assistance claim, therefore, is neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on his claims regarding the jury instructions (habeas ground VI).

## VII. Prosecutorial misconduct

Petitioner's claims of prosecutorial misconduct appear in his *pro per* brief filed in the Michigan Court of Appeals and attached to his petition. (Std. 4 Br., ECF No. 1-1, PageID.44-65.) The brief's six discrete numbered habeas grounds set forth above bespeak a level of organization that is sorely lacking in the body of the brief (*Id.*, PageID.52-64). Petitioner's argument consists of a six-page, three-year history of his struggles with the Traverse Narcotics Team. (*Id.*, PageID.52-57.) That history, however, except for a few sentences set forth below, does not relate to the issues he raises in the brief except to highlight his claim that he is being singled out and treated unfairly.

The first numbered ground for relief in Petitioner's brief—habeas ground VIII above—claims that the trial court erred when it denied Petitioner's motion for a mistrial based on the prosecutor's misstatement of the law. (*Id.*, PageID.45, 50.) That ground merited a few sentences in Petitioner prefatory history:

> During closing arguments the prosecutor told lies about me and the Michigan Medical Marijuana Act. My attorney caught the lies and requested a sidebar. The judge told the jury to leave the room and then agreed with my lawyer that the prosecutor was wrong. He (the judge) asked "What remedy do you seek?" My attorney said: "Mistrial." This was denied. The judge said he would give a "curative instruction" to the jury to disregard what they just saw and heard.

(*Id*., PageID.56.)  Beyond that description, however, the only content in Petitioner's brief that might relate to the claim is a four-page listing (*Id*., PageID.61-64) of transcript references that purport to identify instances during Petitioner's testimony, closing arguments, and sentencing where the prosecutor took some action that Petitioner contends was wrongful.  The instances that relate to closing argument are those tied to transcript pages 990-1037.  Generally, it is apparent that Petitioner uses his very different interpretation of the MMMA to brand statements by the prosecutor as lies.  Nonetheless, among Petitioner's transcript references is the following: "pg. 1009 [Petitioner's counsel] objects to visual aid by [the prosecutor]."  (*Id*., PageID.62.)

Petitioner's presentation of this issue in the state appellate courts, which he repeats in this Court, is so cryptic and scant that this Court has no clue regarding the nature of the prosecutor's misconduct or what prejudice might have remained after the curative instruction. That same problem apparently flummoxed the Michigan Court of Appeals.  That court made no reference whatsoever to Petitioner's claim regarding the request for or denial of a mistrial in connection with the prosecutor's closing argument.  But, the appellate court acknowledged that Petitioner presented several additional arguments "none of which merit relief."  (Mich. Ct. App. Op., ECF No. 1-1, PageID.39.)

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended

to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 567 U.S. at 47 (quoting *Harrington*, 562 U.S. at 103).

Petitioner offers this Court nothing to show that the appellate court's rejection of his claim was so lacking in justification that all fairminded jurists would agree. Therefore, he has failed to show that the state court's rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law.

The third numbered ground for relief in Petitioner's brief—habeas ground X above—claims that the trial court erred when it allowed the prosecution to commit misconduct. (Std. 4Br., ECF No. 1-1, PageID.46, 50.) Petitioner's brief explains this ground in some detail.

(*Id.*, PageID.58-59.)  Petitioner complains that the prosecutor committed misconduct when he introduced evidence of Petitioner's "other bad acts."  (*Id.*)  The Michigan Court of Appeals specifically addressed this claim:

> [D]efendant claims that the prosecution engaged in misconduct by introducing "other acts evidence" which impermissibly prejudiced him before the jury. Defendant claims he was entitled to a mistrial based on this misconduct.  However, the challenged evidence was a good-faith effort to admit evidence does not constitute misconduct.  *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007).  That is especially true here where the trial court's order explicitly permitted the admission of the challenged evidence.  To the extent that defendant challenges the admission of the "other acts evidence" under MRE 404(b) in this case as an evidentiary error, the record shows that the parties stipulated to the admission of the 404(b) evidence.  "A party cannot stipulate a matter and then argue on appeal that the resultant action was error."  *Holmes v Holmes*, 281 Mich App 575, 588; 760 NW2d 300 (2008), quoting *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001).

(Mich. Ct. App. Op., ECF No. 1-1, PageID.39-40.)

Petitioner does not challenge the appellate court's findings that the parties stipulated to the admission of the "other bad acts" evidence.  Where the parties stipulated to the admission and the court permitted it, there can be no prosecutorial misconduct.  "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings."  *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008).  Under those circumstances, Petitioner's only possible argument would be that admission of "other bad acts" evidence violates due process.  *See Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 2009).

There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence.  In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged

crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.

Accordingly, Petitioner cannot show that the state court's rejection of his claim relating to "other bad acts" evidence is contrary to, or an unreasonable application of, clearly established federal law. Petitioner is not entitled to relief on his claims based on purported prosecutorial misconduct (habeas grounds VIII and X).

## VIII. Access to the courts

Finally, Petitioner contends that he was denied access to the courts during his appeal because the facility in which he was incarcerated did not provide him access to an adequate law library. The court of appeals rejected Petitioner's claim concluding that his access to the courts was protected by representation of counsel at trial and on appeal. (Mich. Ct. App. Op., ECF No. 1-1, PageID.40.) The Sixth Circuit has reached the same conclusion. *United States v. Smith*, 907 F.2d 42 (6th Cir. 1990). Even where a criminal defendant waives the right to counsel, he is not constitutionally entitled to a law library to facilitate his self-representation. *Id.* at 45-46 citing *Faretta v. California*, 422 U.S. 806 (1975). Petitioner has, therefore, failed to show that the state appellate court's rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on this claim (habeas ground XIII).

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (*per curiam*). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

Moreover, although the Court concludes that Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Court will enter a judgment and order consistent with this opinion.


Dated:  November 14, 2019          /s/ Paul L. Maloney
                                   Paul L. Maloney
                                   United States District Judge